IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRETT T. ROBENHORST, )
 )
               Plaintiff, )
 )
v. ) No. 05 C 3192
 )
SIEMENS LOGISTICS AND ASSEMBLY )
SYSTEMS, INC., )
 )
               Defendant. )

## MEMORANDUM OPINION AND ORDER

Brett Robenhorst ("Robenhorst"), who suffered a left foot amputation in the course of his work for Ford Motor Company at its Chicago Heights, Illinois stamping plant facility, has sued Siemens Logistics and Assembly Systems, Inc. ("Siemens"), which had been the source of the automatically guided vehicles ("AGV") system that was the situs of Robenhorst's misfortune. Siemens has moved for a protective order as to a portion of Robenhorst's discovery requests, invoking both the attorney-client privilege and the attorneys' work product doctrine, and Robenhorst has promptly filed a responsive memorandum. At the time of presentment of Siemens' motion on August 17, this Court ruled orally as to the general principles applicable to the dispute--but the particulars of that application have required this Court's in camera review of the Siemens documents at issue (a procedure to which both parties have consented).

Because Siemens had already provided Robenhorst (and has since provided this Court) with a privilege log describing the

three sets of documents that are the subject of its claims for protection, this memorandum opinion and order will address them in the same sequence. All three sets of items stem from the work of investigators Stephfan Sissell ("Sissell") and Jeff Guinn ("Guinn"), who went to the Ford plant the day after the incident (November 4, 2004) for the purpose of generating a report to Siemens' in-house counsel David Keller and Jeff Heinze.

Before this opinion addresses the documents themselves, a brief bit of background as to the operative principles is in order. Although the most generally accepted version of the attorney-client privilege would embrace the documents at issue (see Upjohn Co. v. United States, 449 U.S. 383 (1981), which provides the definitive teaching as to the scope of the privilege under federal law; and see generally Edna Epstein, The Attorney-Client Privilege and the Work Product Doctrine 100-07 (4th ed. 2001)), under Fed. R. Evid. 501 state law provides the rules of decision in this diversity action.

In that respect the definitive Illinois Supreme Court opinion in this diversity action, Consolidation Coal Co. v. Bucyrus-Erie Co., 89 Ill.2d 103, 432 N.E.2d 250 (1982)(somewhat surprisingly cited as authority in both sides' memoranda), has adopted the considerably more constricted "control group" standard in defining the reach of the privilege. And because the request for the investigation here did not emanate directly from

2

anyone high up in the Siemens corporate hierarchy, it is doubtful whether the Illinois version of the privilege would extend to the documents in question. Hence this Court will focus instead on federal work product principles, the scope of which is dictated by Fed. R. Civ. P. 26(b)(3) and the caselaw implementing it (essentially stemming from the seminal decision in <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947)).

This opinion turns then to the particulars of the dispute, addressing first the November 8, 2004 memorandum prepared by Sissell and Guinn and transmitted by them to Siemens' in-house counsel. Most but not all of that memorandum is purely factual in nature, containing none of the mental impressions and the like that are insulated by the work-product doctrine. This Court has accordingly redacted that document to eliminate the nondiscoverable portions, and the redacted version is attached to this opinion.[1]

Next up for consideration are a host of papers described in Siemens' privilege log as "Handwritten notes of investigation," with the further explanation that they are "Notes from investigation in preparation of the Memorandum Re: Ford Motor Co. Chicago Stamping Plant." As that description suggests, for

---

[1] As the Siemens privilege log reflects, the remaining items in this first-listed item comprise photographs that its counsel has already committed, at the time of this Court's August 17 oral ruling, to deliver to Robenhorst's counsel.

the most part those papers are sketchy handwritten notes (including sketches and diagrams), and in material part either they are uninformative to third-party readers or, in some respects, they disclose the kind of insights against which the work-product doctrine protects. There are some exceptions to that basis for exclusion from the discovery process, and copies of those exceptions are also attached to this opinion.

Finally, Siemens' privilege logs lists an unsigned November 10, 2004 memorandum "prepared by Tony Piotrowski" and describes that memorandum as "Summary of Fiscal evaluation and testing of AGV bumper." From this Court's review, that memorandum is a prototypical work-product-protected document. Its statements and its evaluations are geared to Siemens' potential defenses against the claim by Robenhorst, and it is simply not feasible to carve away any limited portion that might arguably be characterized as factual investigation and therefore found discoverable. Accordingly no part of that last document is ordered to be provided to Robenhorst.

Because this opinion is self-contained, having attached the documents that this Court has found not to be subject to Siemens' request for a protective order as well as having stated the reasons for this Court's rulings, it will not be necessary for Siemens' counsel to tender any independent delivery of the unprotected documents to Robenhorst's counsel. As the only

possible exception, some better quality may perhaps be provided in terms of the photographs that accompany this opinion.

                                     /s/ Milton I. Shadur
                                     _____
                                     Milton I. Shadur
                                     Senior United States District Judge

Date:   August 18, 2005

November 8th, 2004

Memorandum

To:       Dave Keller & Jeff Heinz

From:    Stephfan Sissell & Jeff Guinn

Re:      FORD Motor Co. – Chicago Stamping Plant
         Left Foot amputation – Line 191

Location:   FORD Motor Co. Chicago Stamping Plant
            1000 EAST LINCOLN HIGHWAY
            CHICAGO HEIGHTS, IL 60411

The purpose of this trip was to investigate an incident that occurred at approximately 6:50pm on Wednesday, 11/03/2004 in which FORD employee (Brett Robenhurst) suffered a left foot amputation on Line 191.

he accident occurred when the employee was stacking panels at the west loading station at the end of Line 191. Upon jogging the last trailer into place the employee failed to jog the trailer to the yellow line on the floor. AGV #22 in the staging area released and began to move toward the north loading station. The front right corner of the second trailer of the advancing train caught on the right rear corner of the trailer the employee was loading. The employee had stepped down off the man stand and into a gap between the man stand and the trailer he was loading. AGV #22 cleared the trailer that trailer number 2 caught. When the trailer was caught the AGV slid the trailer the employee was loading over pinching the employee's foot between the man stand and trailer, severing the employee's left foot.

We arrived on the site 11/04/2004 at 1:15PM CST to investigate the accident. Jeff checked the AVG equipment. The codes were being read by AVG #22 and AGV #13. Upon inspection of the AGV #22 bumper we observed a repair had been made to the front right corner of the bumper. The bumper was broken at some earlier date and was repaired by bolting the 2 pieces of the bumper back together. By re                                                                                    Also, the bumper cables on
AGV #22 had been shortened with a zip strip and electrical tape;                           ien

Witnesses to the accident were Everardo Ledezma, Gregg McBrayer, Hernandez Guillermo and Tony Orleans. Mike Matuska was the Forman on line 191 at the time of the accident.

Ford employees that conducted the original investigation (see attached various copies), Dan Harris – Material Handling Manager, Marc Becker – Safety Engineer, George Sopher – UAW Safety Rep, Ike Essary – UAW Safety Rep., Tim Caplice – HR Manager, H. Daniel Stanley – HR Supervisor, Risk Manager, Roger Damm – Ford Corporate, Dan Dattilo – FPS Manager, and Marilyn Cox – Union AGV Tender.

We are still awaiting the original investigation report we saw on Thursday, November 4th 2004 when we arrived on site. This report was shown to us by Dan Dattilo FPS Manager, on the 4th page under – "Other Information" there was a second paragraph stated the operator was inexperienced and not trained on line 191. We have received two other versions of the same report to date. We also asked for copies of the hand written Witness Statements and the Supervisor Accident report that we viewed in Marc Becker's office on the Friday, November 5th 2004.



Reinactment of Approaching AGV (Right) Stationary AGV (Left)

# Line 191 Load Station





Rack Being Loaded From Manstand – Location Where Foot Was Injured Highlighted

## Area Where Foot Was Pinned



Working with the injured party
EVERARDO Ledezma

Greg Mc~~Lifer~~
   Mc.Brayer

~~Hander~~z

Hernandez, Guillermo
                5 yr online

Tony Ornelas 4 yrs
                online

Mike Matuska
was the forman.

The Injured person
told Mike that he
didn't know how to run
the job.

From Maryline Cox
11-4-04 [signature]

# Left Foot Amputation

Chicago Stamping Plant –
November 3, 2004 – 6:50 p.m. –
Line 191   6:50 pm



# What Happened

- The employee was stacking panels at the west loading station at the rear of Line 191.
- He jogged the AGV pulled dollie train he was loading forward and began loading the final dollie.
- The AGV in the staging area to the west released and began to move toward the north loading station (there is a north and a west loading station and the AGV path is in the shape of a loop – see diagram).
- The front right corner of the second dollie of the advancing dollie train caught on the right rear corner of the dollie the injured was loading.
- The injured had stepped off the man stand and in a gap between the man stand and the dollie/rack he was loading.
- The dollie he was loading was pulled/pushed against the man stand pinching the injured's left foot.

# Other Information

- The employee seniority date is 5-1-00 and he is assigned to work in Department 12 and had been assigned to the Line 191 loading station for about 10 minutes when the incident occurred.