IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRETT T. ROBENHORST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 3192 |
| v. ) | |
| ) | Mag. Judge Michael T. Mason |
| SIEMENS LOGISTICS AND ) | |
| ASSEMBLY SYSTEMS, INC. ) | |
| ) | |
| Defendant, ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Plaintiff Brett T. Robenhorst filed a complaint to recover damages for personal injuries he sustained from a workplace accident involving an automatic guided vehicle ("AGV") manufactured by Siemens Logistics and Assembly Systems, Inc. n/k/a Dematic Corp. ("Dematic"). Dematic moves for summary judgment on the basis that, on the record assembled, plaintiff cannot establish a prima facia case of negligence. For the reasons stated below, Dematic's motion is denied.

**FACTUAL BACKGROUND**[1]

Plaintiff was an employee of Ford Motor Company ("Ford") and sustained his injuries while working at Ford's Chicago Heights Stamping Plant (the "Ford Plant"). The Ford Plant utilizes an AGV system. An AGV system is one of many types of material movement systems that can be integrated into a manufacturing plant. Ford maintained

---

[1]Unless otherwise indicated, the relevant facts are taken from the parties' filings under Local Rule 56.1.

and operated the AGV system on a daily basis. Dematic contends that the industrial engineers at the Ford Plant selected the AGV system and further contends that Ford choose the location of stops, system routes and the number of vehicles and trailers incorporated into the AGV system.[2] In contrast, plaintiff contends that Dematic engineered a standard product which included the AGV battery chargers, plate wire, responders and constant system monitoring software which was customized for a specific customer - Ford. Plaintiff further contends that "nothing was done" to the AGV system without Dematic's involvement and that Dematic was frequently on site and approved or was aware of all changes to the AGV system.

On November 3, 2004, the date on which he sustained his injuries, plaintiff was assigned to station 50 on the Ford Plant floor. Ford did not provide plaintiff with the required station-specific personnel qualifications before assigning him to station 50. Station 50 was located at the west end of Line 191. It was possible for more than one AGV to be in the loop at Line 191. Station 50 included a manstand, or raised platform, which functioned as a loading station. Dematic contends that it did not design, supply, install or recommend the use of a manstand. An electrical switch was also present at the west end of Line 191, which could be used to jog any AGV at that station forward.

Immediately prior to the incident, plaintiff was loading panels onto a stationary

---

[2]In its response to plaintiff's Fed. R. Civ. P. 56.1 (b)(C) statement of additional facts, Dematic repeatedly cites the Preliminary Report of its expert, Kenneth Smith. However, that report does not cite the specific document, testimony or other form of evidence Smith relied on in forming his factual assumptions. Consequently, this Court cannot determine the specific materials Dematic relies on to support a number of factual propositions, including its statements that Ford selected the location of the AGV system paths, determined the number of AGV vehicles on any given loop, and "desired" the manstand.

trailer pulled by an AGV (the "Station 50 AGV"). While loading the panels, plaintiff stepped off the manstand and stood in a gap between the manstand and the stationary trailer. He did so in violation of Ford Plant procedures. Plaintiff also "jogged" the Station 50 AGV, which pulled the trailer he was loading forward. As plaintiff continued loading the trailer, it was struck by a trailer pulled by another AGV ("AGV #22"). The resulting impact pushed the stationary trailer into the manstand, trapping plaintiff's left leg between the trailer and the manstand platform. Plaintiff's leg was later amputated below the knee.

The AGV vehicles at issue were manufactured by Dematic and sold to Ford in 1998.[3] At that time, Dematic provided Ford with an Operations and Maintenance Manual (the "Manual") to be used as a guide and reference when servicing the AGV's. Ford maintained a copy of the Manual in its truck shop.

Each AGV vehicle at Ford was equipped with a bumper. The bumper is the primary safety device for the AGV vehicles and is designed to stop a vehicle if it comes into contact with an unexpected or unforseen object, such as a person, a piece of equipment, a trailer, or another AGV. As manufactured, the AGV bumper is made from a polycarbonate material which allows the bumper to correctly react to contact forces. A compression on the bumper from an outside source triggers an electrical switch, which stops the vehicle. Dematic did not maintain or routinely repair the AGV vehicles. Rather, Ford's truck mechanics maintained and repaired the AGV vehicles at the Ford Plant, including AGV #22 and its bumper. The bumper on AGV #22 had been worked

---

[3] The record does not indicate when Dematic manufactured the remaining components of the AGV system.

on by Ford personnel on November 2, 2004 - the night before the accident.

Following the accident, Ford employees removed the bumper on AGV #22 and gave it to two Dematic employees for testing. With Ford's permission, the bumper was taken to Dematic's facility in Grand Rapids where it was inspected, measured and tested. The inspection revealed that the bumper was not a Dematic bumper. In fact, Dematic's standard bumper, which was provided with each AGV when sold, had been replaced. The bumper on AGV #22 at the time of the accident (the "Ford Bumper") was fabricated by Ford or someone hired by Ford, not Dematic, and was not made out of original parts.[4] Ford decided to do this for cost reasons; ordering a bumper from another source was less expensive than ordering Dematic's standard replacement bumper. The Ford Plant had not ordered a standard Dematic bumper for this model AGV since 1999.

Dematic's inspection and testing of the Ford Bumper revealed that it differed from the standard Dematic bumper and the recommendations outlined in the Manual in a number of ways. First, the Ford Bumper was spliced, which was specifically prohibited by the Manual. The two broken parts of the leaf resulting from the splice were mounted tighter by overlapping and bolting with three fasteners. The location of this splice was at a critical point. It affected the reaction to the bumper cables which sensed contact by relieving the tension on the cables attached to the switch that opened the safety circuit of the vehicle. This improper splice was also not installed square to the bumper. Second, the leaf material for the bumper was not processed in accordance with Dematic

---

[4]The record does not indicate if Ford or someone hired by Ford replaced the bumper on AGV #22 with the Ford Bumper on November 2, 2004 or on a prior date.

specifications, which increased the bumper's susceptibility to breakage. Third, the Ford Bumper stiffener was not supplied by Dematic, another condition prohibited by the Manual. The new stiffener was made of thinner material than Dematic's standard stiffener, which could cause the tension on the cables to not relieve, thus causing the vehicle to continue traveling after coming in contact with an object. Further, the bumper stiffener was mounted off center. Finally, hinges on both sides of the Ford Bumper were damaged and had not been repaired. The right side hinge was significantly deformed and did not move.

After Dematic completed its testing of the Ford Bumper, Dematic hand delivered the bumper to Ford's Director of Safety and Human Resources. Despite a court order requiring Ford to maintain and preserve the equipment at issue in this case, Ford subsequently misplaced or destroyed the Ford Bumper. Because Ford has been unable to locate the Ford Bumper, it has not been available for testing or observation by the parties' experts.

Plaintiff filed a single count complaint against Dematic in Cook County Circuit Court asserting that Dematic was negligent in one or more of the following ways:

> (a) engineered, designed & created the AGV system in the assembly plant so that vehicles & trailers using the tracks could foreseably collide, creating a substantial risk of injury;[5]

---

[5] Plaintiff's briefing clarifies that his claim is based on Dematic's alleged negligence "in providing engineering services concerning the AGV system, which includes the electrical controls, the layout of the radio frequency paths that the vehicles travel over, and the location of structures near the paths."

(b) incorporated a goggle switch design[6] near line 191 whose use would permit AGV's to collide, causing injuries to workers in their vicinity.

Dematic removed this case from the Circuit Court of Cook County in May 2005. Removal was proper because the parties are of diverse citizenship and the amount in controversy exceeds $75,000. In January 2007, the parties consented to a magistrate judge and the case was assigned to this Court.

Dematic now moves for summary judgment. Dematic contends that plaintiff has not met his burden to produce facts establishing that the product's defective condition was in existence at the time it left the manufacturer's control. Dematic alleges that the product as originally manufactured was equipped with a safety device - the standard Dematic bumper - that would have prevented plaintiff's injuries had Ford not replaced it with an inferior substitute. Dematic contends that plaintiff has not produced any facts establishing that the AGV system as manufactured proximately caused plaintiff's injuries or that Ford's replacement of the bumper on AGV #22 was foreseeable.

In support of its motion, Dematic attached affidavits and a report by Kenneth M. Smith, a Licensed Professional Engineer who investigated the circumstances surrounding plaintiff's injury and "evaluated the safety of the AGV system that was in use at the time of the accident." Smith's report defined the AGV system as the "tractor vehicle and trailers (sometimes referred to as a dolly train) and ... the track, guidance and controls that make the AGV move, stop, and direct the paths of the vehicle." In his

---

[6]Because we are required to draw all reasonable inferences in the light most favorable to the non-movant, we will presume that the "google switch design" referenced in plaintiff's complaint is the same function as the "jog" control or electrical switch referenced in plaintiff's Rule 56.1(b)(C) statement of additional facts and Rule 26(a)(2) disclosures. The record on this matter, however, is not entirely clear.

report, Smith concluded that there was no evidence that Dematic engaged in any negligent act or "provided AGV equipment that was not in compliance with industry accepted consensus standards." Smith opined that if the bumper on AGV #22 had been properly maintained, it "is very likely that the bumper on AGV 22 would have detected the stopped, intruding trailer and caused the oncoming AGV to stop, preventing the accident." Smith concluded that if Ford had properly maintained the trailers "the accident would have been prevented." He also concluded that the failure to properly use the manstand as a safety device contributed to the accident which is "primarily a failure of the training" plaintiff received for his particular work station. Smith noted that Dematic had been contracted by the Ford Plant to "perform installation and modifications to the AGV system" and that inspection of the accident site "was inconclusive as to whether or not the responder placement was ever changed by Ford from its original installation." Finally, Smith concluded that the use of the electrical switch to manually jog the AGV's in place was a "safe and accepted practice" known as "semiautomatic mode."

In response, plaintiff submitted an affidavit from John Mroszczyk, a safety engineer, and his Fed. R. Civ. P. 26(a)(2) disclosure of opinions. Mroszczyk identified specific instances of Dematic's noncompliance with accepted and recognized engineering and safety principles and opined that this conduct proximately caused plaintiff's injuries. Mroszczyk opined that Dematic was aware of or created a number of dangerous conditions including: the use of multiple AGV vehicles in Line 191, the location of the charging stations, the placement of responders, and the use of a jog electrical switch, rather than an index function. Mroszczyk also opined that it was not

7

reasonable for Dematic to rely on the employer to train all employees to safely use the system it created, and that Dematic did not follow accepted industry standards in its post-design modification of the AGV system.[7]

**STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56(c), summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The nonmovant cannot rest on the pleadings alone, but must identify specific facts to show that there is a genuine triable issue of material fact. *See, e.g. Murphy v. ITT Educ. Servs., Inc.*, 176 F.3d 934, 936 (7th Cir. 1999); *Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993). At this stage, courts do not weigh evidence, make credibility calls, or determine the truth of matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510 (1986). Rather, courts must view the record and all reasonable inferences drawn therefore in the light most favorable to the nonmovant. Fed. R. Civ. P. 56(c); *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

The parties have briefed this case under Illinois substantive law. Tort cases involving personal injury and product liability implicate State-created rights. When a federal court sitting in diversity deals with State-created rights, the federal court is "in substance only another court of the State." *Bernahrdt v. Polygraphic Co. of America*, 350 U.S. 198, 203, 76 S.Ct. 273, 276 (1956). The injury in this case occurred in Illinois.

---

[7]Mroszczyk cites specific deposition testimony that he relied on in forming his opinions, not all of which was provided to this Court for review.

Accordingly, Illinois law governs in this matter. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938).

**DISCUSSION**

Under Illinois law, in order to succeed on a negligence claim plaintiff must establish that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and (3) that the breach was the proximate cause of the plaintiff's injuries. *Chandler v. Illinois Cent. R.R. Co.*, 207 Ill.2d 331, 340, 798 N.E.2d 724, 728 (Ill. 2003). The burden of proof under a negligence claim "remains on the plaintiff throughout the proceedings to prove all of the elements of negligence." *Blue v. Environmental Eng'g, Inc.*, 215 Ill. 2d 78, 96, 828 N.E.2d 1128, 1142 (Ill. 2005) (citations omitted). Unlike a strict liability claim, negligence does not permit liability without fault. *Baltus v. Weaver Div. of Kidde Co.*, 199 Ill. App. 3d 821, 829, 557 N.E.2d 580, 585 (Ill. App. Ct. 1990).

"Illinois cases considering a cause of action for defective products liability sounding in negligence rather than strict liability are rare, probably because it appears to plaintiffs that it is easier to prove the strict liability count." *Blue*, 828 N.E.2d at 1141. In the context of negligent design, a plaintiff must prove either that: "(1) the defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed, or (2) that the defendant knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and defendant failed to warn of its dangerous propensity." 828 N.E.2d at 1141 (*collecting cases*). The Seventh Circuit has construed Illinois law on negligent design to require a plaintiff to establish: (1) the existence of a defective condition in the product at

the time it left the manufacturer's control, and (2) a casual link between the alleged design defect and the plaintiff's injury. *Fuesting v. Zimmer, Inc.,* 421 F.3d 528, 532 (7th Cir. 2005) (*internal quotations omitted*). Further, if a plaintiff contends that the product design is "unreasonably dangerous," he must provide evidence of "an alternative design which is economical, practical and effective." *Baltus*, 557 N.E.2d at 586.

Dematic claims that it is entitled to summary judgment because plaintiff cannot come forward with facts establishing breach of duty or that the alleged defects to the AGV system proximately caused plaintiff's injuries. Under Illinois law, breach of duty and proximate cause are questions of fact for the fact finder. *Chandler*, 798 N.E.2d at 728, *citing Thompson v. County of Cook*, 154 Ill. 2d 374, 382, 609 N.E.2d 290, 293 (Ill. 1992). Accordingly, we will enter judgment in Dematic's favor only if plaintiff has not presented sufficient evidence to enable a reasonable fact finder to conclude that the elements for breach and proximate cause are met. *See id.*

As an initial matter, we note that there is a dispute between the parties regarding the specific product at issue (the AGV system) and the extent and timing of any engineering work done by Dematic. The parties' Rule 56.1 filings do not provide a detailed description of the AGV system. Dematic's expert defines the AGV system as the "tractor vehicle and trailers (sometimes referred to as a dolly train) and ... the track, guidance and controls that make the AGV move, stop, and direct the paths of the vehicle." Dematic admits that it manufactured the AGV vehicles, including AGV #22. However, Dematic alleges that the surrounding component parts are irrelevant because the "system at issue was built for one, and only one purpose - to operate the AGV vehicles." Dematic contends that Ford designed the AGV system map and assumed

responsibility for maintenance of the AGV system, as set forth in the Manual. In contrast, plaintiff, through his expert, alleges that Dematic designed, engineered and/or maintained the AGV vehicles, towed trailers, electronic control switch, responders, and other related components, and designed the floor area and line placement. Plaintiff also contends that Dematic remained on site at the Ford Plant even after the date Dematic manufactured the AGV vehicles and that "nothing was done" to the AGV system without Dematic's involvement.

Under Illinois law, a plaintiff raising a negligence claim "must do more than simply allege a better design for the product, he must plead and prove evidence of a standard of care by which to measure a defendant's design and establish a deviation from that standard." *Blue*, 828 N.E.2d at 1141 (collecting cases); *see, also Swiatlowski v. Werner Co.*, 2006 U.S. Dist. LEXIS 10842, *13 (N.D. Ill. March 7, 2006) ("in order to survive summary judgment, [plaintiff] must present evidence of an alternative design which is economical, practical and effective.") Here, plaintiff has presented expert testimony, in the form of Mroszczyk's affidavit and disclosure, identifying specific safety guards or devices that were necessary to render the AGV system safe and presented evidence of an alternative design which is economical, practical and effective. For example, plaintiff contends Dematic negligently incorporated the goggle switch design, the use of which would permit AGV vehicles to collide. Plaintiff's expert, Mroszczyk, opined that the use of a "jog" control instead of an "index" control allowed variability in the placement of the trailers at station 50. He further opined that an index function, which moves the AGV forward a pre-determined distance rather than allowing the AGV to be jogged at will, would have prevented contact between the stationary trailer and the trailer attached to

AGV #22. Plaintiff also contends that the placement of the responder that released the AGV from station 27 was in an unsafe location and, along with the operation of multiple AGV's in line 191, caused or contributed to cause his injuries. Mroszczyk opined that a properly placed B255 responder would have prevented plaintiff's injuries and that it was feasible to design the AGV system with additional safety guards such that only one vehicle need be in the loop by Line 191. Mroszczyk's opinions create a triable question of fact on the breach element of plaintiff's negligence claim. *See id.*

Proximate cause is essentially a question of foreseeability. *Lawrence v. Bridgestone/Firestone, Inc.,* 963 F. Supp. 685, 687 (N.D. Ill. 1997). "As the Seventh Circuit has stated, a defendant's conduct is the proximate cause of a plaintiff's injury if all events following that conduct, including any actions by the plaintiff, are its reasonably foreseeable results." *Id.*, *quoting Suzik v. Sea-Land Corp.*, 89 F.3d 345, 348 (7th Cir. 1996) (*internal quotations omitted*). There may be more than one proximate cause of an injury and a defendant "may be held liable even if his negligence is not the sole proximate cause of the plaintiff's injuries, so long as his conduct contributed in whole or in part to the injury." *Mack v. Ford Motor Co.*, 283 Ill. App. 3d 52, 57, 669 N.E.2d 608, 613 (Ill. App. Ct. 1996), *citing Pell v. Victor J. Andrew High Sch.*, 123 Ill. App. 3d 423, 430, 462 N.E.2d 858, 863 (Ill. App. Ct. 1984). Proximate cause may be decided as a matter of law only "when reasonable people could not differ as to the inferences to be drawn from the undisputed facts." *Lawrence,* 963 F. Supp. at 687, *citing Williams v. Chicago Bd. of Educ.*, 267 Ill. App. 3d 446, 451, 642 N.E.2d 764, 768 (Ill. App. Ct. 1994); *see, also Kempes v. Dunlop Tire and Rubber Corp.,* 192 Ill. App. 3d 209, 214, 548 N.E.2d 644, 647 (Ill. App. Ct. 1989) (foreseeability may be decided as a matter of

law only "where the facts demonstrate that the plaintiff could never be entitled to recover.")

Here, Dematic contends that it is entitled to summary judgment because Ford's modification of the AGV #22 bumper was an unforeseeable and substantial change which cuts off Dematic's liability. *See Augenstine v. Dico Co., Inc.* 135 Ill. App. 3d. 273, 276, 481 N.E.2d 1225, 1227 (Ill. App. Ct. 1985) (Restatement Section 402A(b) imposes strict liability only where the defective product reaches the user or consumer without substantial change in the condition in which it is sold); *DeArmond v. Hoover Ball and Bearing,* 86 Ill. App. 3d 1066, 1070, 408 N.E.2d 771, 774 (Ill. App. Ct. 1980) (affirming summary judgment on grounds that employer's modification of product cuts off manufacturer's liability). It is undisputed that the bumper was the primary, although not the sole, safety device on the AGV vehicle, and that Ford replaced the bumper with a cheaper bumper that was not made out of original parts. However, plaintiff contends that Dematic designed the AGV system, not just AGV #22, and that Dematic continued to perform engineering work on the AGV system after delivering the AGV vehicles to Ford in 1998.

To support its contention that Ford's replacement of the standard Dematic bumper with the Ford Bumper was an effective intervening cause that broke the chain of causality, Dematic relies on the Illinois Appellate Court's holdings in *Augenstine,* 481 N.E.2d 1225, and *DeArmond,* 408 N.E.2d 771. These cases are not persuasive.

In *Augenstine*, a strict liability case, the court affirmed summary judgment in favor of defendant manufacturer on the grounds that the plaintiff produced nothing to indicate the existence of facts casually connecting his injuries with the product as originally

manufactured. 481 N.E.2d at 1227. Similarly, in *DeArmond*, the undisputed facts before the court established that the employer set up the machine at issue and that the manufacturer was unaware of the employer's modification of the machine to remove the safety device. 408 N.E.2d at 772. In contrast, plaintiff has provided this Court with sufficient facts to allow the reasonable inference that something other than the modified bumper caused or contributed to cause the plaintiff's injury. Plaintiff's expert opined that a number of conditions contributed to the hazardous and dangerous condition that lead to plaintiff's injury, including the configuration of the AGV system, the use of multiple AGV's in Line 191, the jog switch, and the placement of responders. While Dematic's expert opined that "it is very likely" a properly maintained bumper on AGV #22 would have prevented the accident, he also concluded that other factors caused or contributed to the accident. For example, Smith opined that the trailer pulled by AGV#22 had not been properly maintained which "more likely than not" contributed to the improper tracking of the trailer. He further opined that "[a]bsent this condition, the trailer would have tracked more closely behind the trailer ahead and the accident would have been prevented."

Based on the present record, it is conceivable that a reasonable jury could find that another component of the AGV system, such as the jog switch or responders, created a foreseeable danger. Because there is question of fact as to whether a component of the AGV system as designed, manufactured or engineered by Dematic proximately caused plaintiff's injury, Dematic is not entitled to summary judgment. *See, e.g. Lawrence*, 963 F. Supp. at 689 (denying motion for summary judgment where reasonable people could differ as to whether intervening actor's response to defendant

manufacturer's alleged negligence was foreseeable); *Coleman v. Verson Allsteel Press,* 64 Ill. App. 3d 974, 979-80, 382 N.E.2d 36, 40-41 (Ill. App. Ct. 1978) (distinguishing cases where evidence revealed existence of some other defect in product as designed).

## CONCLUSION

For the foregoing reasons, defendant Siemens Logistics and Assembly Systems, Inc. n/k/a/ Dematic's motion for summary judgment is denied.

                                               **ENTER:**

                                               */s/ Michael T. Mason*

                                               **MICHAEL T. MASON**
                                               **United States Magistrate Judge**

**Dated: March 6, 2008**