# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRETT T. ROBENHORST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 3192 |
| v. ) | |
| ) | Mag. Judge Michael T. Mason |
| DEMATIC CORPORATION ) | |
| f/k/a SIEMENS LOGISTICS AND ) | |
| ASSEMBLY SYSTEMS, INC. ) | |
| ) | |
| Defendant, ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are plaintiff Brett T. Robenhorst's ("plaintiff") motions *in limine* and defendant Dematic Corporation f/k/a Siemens Logistics and Assembly Systems, Inc.'s ("defendant" or "Dematic") motion *in limine*.[1] For the reasons set forth below, plaintiff's motion to bar any reference to unrelated health conditions, care or treatment is denied in part and granted in part; plaintiff's motion to bar any reference to negligence or other misconduct by Ford is denied; and plaintiff's motion to bar any reference to Dematic's bumper testing or in-court demonstration of automatic guided vehicle ("AGV") mockups is denied. Defendant's motion to preclude plaintiff from presenting evidence of any prior occurrence that is not substantially similar to the accident at issue is denied in part and granted in part.

## I.     BACKGROUND

Plaintiff seeks damages from Dematic for injuries he sustained while working at

---

[1] Defendant also filed a motion *in limine* to preclude plaintiff from presenting evidence regarding or referring to any remedial measures taken subsequent to plaintiff's accident. We will issue a separate written opinion on that motion.

Ford Motor Company's ("Ford") Chicago Heights Stamping Plant (the "Ford Plant"). The Ford Plant utilizes an AGV system. An AGV system is one of the many types of material movement systems that can be integrated into a manufacturing plant. The AGV's at issue were manufactured by Dematic and sold to Ford in 1998. At the time of sale, each AGV vehicle was equipped with a standard bumper. Ford operated the AGV system on a daily basis, and maintained and repaired the AGV vehicles.

On November 3, 2004, plaintiff was loading panels onto a stationary trailer from a manstand platform at his assigned work station, located on Line 191. As plaintiff continued loading the trailer, he stepped off the manstand and stood in a gap between the manstand and the stationary trailer. The stationary trailer was then struck by a trailer pulled by another AGV ("AGV #22"). The resulting impact pushed the stationary trailer into the manstand, trapping plaintiff's left leg between the trailer and the manstand platform. Plaintiff's leg was later amputated below the knee.

Following the incident, Ford employees removed the bumper on AGV #22 and gave it to two Dematic employees for testing. With Ford's permission, the employees took the bumper to Dematic's facility in Grand Rapids where it was inspected, measured and tested. The inspection revealed that the bumper was not a Dematic bumper. The bumper on AGV #22 at the time of the incident (the "Ford Bumper") was fabricated by Ford or someone hired by Ford, and was not made out of original parts. Dematic's inspection and testing of the Ford Bumper revealed that it differed from the standard Dematic bumper in a number of ways.

After Dematic completed its testing of the Ford Bumper, Dematic hand delivered the bumper to Ford's Director of Safety and Human Resources. Despite a court order

requiring Ford to maintain and preserve the equipment at issue in this case, Ford subsequently misplaced or destroyed the Ford Bumper. Because Ford has been unable to locate the Ford Bumper, it has not been available for testing or observation by the parties' experts.

## II. LEGAL STANDARD

This Court has broad discretion in ruling on evidentiary questions presented before trial on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The power to exclude evidence *in limine* derives from this Court's authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S. Ct. 460 (1984). Evidence should be excluded *in limine* only where it is clearly inadmissible on all potential grounds. *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Thus, the party moving to exclude evidence *in limine* has the burden of establishing that the evidence is not admissible for any purpose. *Id.; see, also Wilson v. Pope* 1997 U.S. Dist. LEXIS 10228, *15 (N.D. Ill. July 14, 1997). Denial of a motion *in limine* does not mean that all evidence contemplated by the motion will be admitted at trial. *Hawthorne,* 831 F. Supp. at 1401. Rather, denial means the court cannot determine whether the evidence in question should be excluded outside of the trial context. *United States v. Connelly*, 874 F. 2d 412, 416 (7th Cir. 1989), *Broom v. Bozell, Jacobs, Kenyon & Eckhardt*, 867 F. Supp. 686, 690-91 (N.D. Ill. 1994). Accordingly, this Court will entertain objections as they arise at trial, even if the proffer falls within the scope of a denied motion *in limine*. *Id.,*

*citing Connelly*, 874 F.2d at 416.

With these guidelines in mind, we turn to the motions before this Court.

## III. DISCUSSION

### A. Plaintiff's Motion to Bar Any Reference to Unrelated Health Conditions, Care or Treatment

As Dematic points out, plaintiff's motion to exclude evidence of unrelated medical treatment is really three motions in one. Plaintiff asks this Court to bar any evidence of or reference to: (1) any pre-existing health condition, care or treatment of plaintiff without proper expert foundation; (2) certain "prior life episodes" that plaintiff related to his counselor, Jean Lubeckis; and (3) any health condition, care or treatment sought or received by plaintiff's wife or family. With regard to plaintiff's first request, Dematic does not intend to argue that there is a casual connection between plaintiff's prior physical injuries - a dislocated shoulder and stitches - and the injuries he is claiming in this case. Therefore, this portion of plaintiff's motion is undisputed.

Turning to plaintiff's alleged mental condition, plaintiff asks this Court to bar certain "prior life episodes" that he relayed to Ms. Lubeckis. These "prior life episodes" are described in Ms. Lubeckis' treatment records. However, these records were not provided to this Court. Nonetheless, in a footnote to his motion, plaintiff states that: "when [he] was young, a friend of his shot his uncle; that other friends were involved in auto theft, burglary; and that when he was single, [plaintiff] engaged in drinking and sexual behavior that he is not proud of today." Plaintiff also states that he married his wife in 1969, meaning that the "prior life episodes" occurred more than 39 years ago.

Defendant contends that the "prior life episodes" are relevant on the issue of

4

damages. Specifically, defendant claims that, to the extent plaintiff discussed these episodes with his mental health provider while seeking treatment, they are relevant to her diagnosis of depression and/or post-traumatic stress disorder. *See* Fed. R. Evid. 701 (relevant evidence is that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.") Alternatively, defendant claims that the evidence may be admitted for impeachment purposes. *See Smith v. Ford Motor*, 215 F.3d 713, 719 (7th Cir. 2000) (counsel must be provided an opportunity to cross-examine the opposing party's expert "regarding his conclusions and the facts on which they are based.")

In *Voykin v. Estate of DeBoer*, the case relied on by plaintiff to support the exclusion of "prior life episodes," the Illinois Supreme Court noted that evidence of a prior injury may be admissible for one of three purposes: "(1) to negate causation; (2) to negate or reduce damages; or (3) as impeachment." 733 N.E.2d 1275, 1279 (Ill. 2000). The *Voykin* court also found that if defendant wished to introduce evidence of a prior injury, "the defendant must introduce expert evidence demonstrating why the prior injury is relevant to causation, damages, or some other issue of consequence." *Id.* at 1280.

Because evidence of plaintiff's "prior life episodes" may be relevant to the issues of damages or causation, *Voykin* does not support the exclusion of plaintiff's "prior life episodes" *in limine.* Rather, it holds that a defendant seeking to introduce evidence of past injuries must introduce expert evidence unless the trial court determines that a lay person can readily appraise the relationship, if any, between the injuries without expert assistance. *See id.*

To the extent plaintiff's motion asks this Court to require defendant to introduce

expert evidence demonstrating why the "prior life episodes" are relevant to "causation, damages or some other issue of consequence," it is granted. However, to the extent it seeks an order barring all evidence of "prior life episodes," it is denied. Should plaintiff claim at trial that the November 3, 2004 incident caused depression, post-traumatic stress disorder, or another form of mental suffering, evidence of his mental health condition, including alternative causes, may be admissible. This Court recognizes that this evidence may have little probative value due to the amount of time that has passed since the "prior life episodes" occurred and that the prejudicial nature of "prior life episode" evidence may outweigh its probative value. However, we reserve ruling on those issues for trial.

Finally, plaintiff seeks to exclude any health condition, care and treatment sought or received by his wife or family. Dematic contends that plaintiff's wife's mental health treatment and desire for treatment are relevant to the extent that they impact or contribute to plaintiff's own mental health. This argument is not persuasive. Plaintiff does not assert a loss of consortium claim, and his wife is a non-party who has not placed her health condition at issue. Accordingly, her health condition, care and treatment, and that of plaintiff's family, is simply not relevant.

Based on the foregoing, plaintiff's motion *in limine* to bar any reference to unrelated health conditions, care or treatment is granted in part and denied in part.

### B.     Plaintiff's Motion to Bar any Reference to Negligence or Other Misconduct by Ford

Plaintiff asks this Court to bar any reference to any negligence or misconduct by Ford or its employees on the grounds that such evidence is not relevant and would

6

unfairly prejudice plaintiff's case against Dematic. In his motion, plaintiff identifies the following "evidence suggestive of negligence or other misconduct that has been disclosed in discovery" which he seeks to exclude:

- that Ford negligently failed to train plaintiff;
- that Ford negligently maintained the AGV and one of the trailers involved in the occurrence;
- that Ford's workers and a supervisor knew of a similar event before the occurrence at issue and negligently did not report it to Ford's service department as a "near-miss" or report the event to Dematic;
- that the aforementioned similar event resulted in discipline against a Ford supervisor;[2]
- that Ford was aware of a protective order prohibiting modification of the AGV's involved in this occurrence, yet Ford lost the AGV #22 bumper; and
- that Ford had a "manstand" or work platform in place at Line 191.

Plaintiff does not provide specific supporting authority for the exclusion of each category of Ford evidence. Rather, plaintiff claims that Ford, as his employer, is excluded from any determination of fault under 735 ILCS § 5/2-1117, as interpreted in *Freislinger v. Emro Propane Co.*, 99 F.3d 1412, 1419 (7th Cir. 1996), and therefore this evidence should not be before the trier of fact. We begin by examining the statute at issue.

> Section 2-1117 provides that, except under certain circumstances:
>
> [I]n actions on account of bodily injury or death ... based on negligence, or product liability based on strict tort liability, all defendants found liable are jointly and severably liable for plaintiff's past and future medical and medically related expenses. Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant except the plaintiff's employer, shall be severally liable for all other damages. Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants except the plaintiff's employer, shall be jointly and severally liable for all other damages.

---

[2]Counsel for Dematic agrees that evidence that employees at Ford were disciplined for a prior event should be excluded. Therefore, this portion of plaintiff's motion is undisputed.

7

735 ILCS § 5/2-1117. In interpreting §2-1117, the *Freislinger* court found that it requires the court to "add up the total fault allocated to a defined set of potentially responsible parties," including third-party defendants who could have been sued by the plaintiff, which "does not include an employer protected by the workers' compensation system." *Freislinger*, 99 F.3d at 1419, *citing Lannom v. Kosco*, 634 N.E.2d 1097, 1100 (Ill. 1994). Thus, while "[t]he amount paid under a workers' compensation award may reduce the total amount recoverable under a damages award ... the employer is not included in the § 2-1117 calculation because it is not a party who 'could have been sued' by the plaintiff." *Freislinger*, 99 F.3d at 1419, *quoting* 735 ILCS § 5/2-1117.

This holding, as well as the requirements of section 2-1117, are simply not relevant to this Court's current inquiry. The issue before us is not who should be included in the jury's apportionment of fault, but rather the exclusion of all evidence of Ford's negligence or "misconduct" *in limine*. *See Unzicker v. Kraft Food Ingredients Corp.*, 783 N.E.2d 1024, 1031-33 (Ill. 2002) (section 2-1117 governs division of fault). Section 2-1117 does not prohibit defendant from introducing evidence that something other than its own conduct proximately caused plaintiff's injuries. *See id.*

Next, plaintiff asserts that Ford's conduct is not relevant to any issue in dispute. In response, defendant points to a key issue in this case - proximate cause. Dematic alleges that it has a right not only to rebut evidence that its conduct proximately caused plaintiff's injuries, but also to establish by competent evidence that the conduct of a third person, or some other causative factor, is the sole proximate cause of plaintiff's injuries. *See, e.g. McDonnell v. McPartlin*, 736 N.E.2d 1074, 1082-85 (Ill. 2000); *Leonardi v.*

8

*Loyola Univ. of Chicago*, 658 N.E.2d 450, 455 (Ill. 1995). This argument is persuasive. Under the "empty chair" defense, Dematic could defeat plaintiff's claim of negligence "by establishing proximate cause solely in the act of another not a party to the suit," such as Ford. *McDonnell*, 736 N.E.2d at 1082; *see, also Bauer v. J.B. Hunt,* 150 F.3d 759, 763 (7th Cir. 1988) ("the defendant is always free to argue that something other than its own negligence is wholly responsible for the plaintiff's injury.")

For the reasons stated above, plaintiff's motion to bar any reference to negligence or other misconduct by Ford or its employees is denied.

**C. Plaintiff's Motion to Bar Any Reference to Dematic's Bumper Testing or In-Court Demonstration of AGV Mockups**

Finally, plaintiff moves this Court to bar: (1) any reference to testing performed on the Ford Bumper by Dematic following the incident; and (2) two demonstrative exhibits purporting to show the front end of an AGV vehicle, one with a standard OEM bumper and one with a recreation of the Ford Bumper. We first note that the Ford Bumper itself is not available, and that neither plaintiff nor defendant are responsible for its loss. However, the parties do not dispute that the Ford Bumper was attached to AGV #22 when plaintiff sustained his injuries and that defendant performed tests on the Ford Bumper prior to its disappearance.

In support of his motion, plaintiff relies on the established principle that "where the purpose is to recreate an event, the timing and physics of which are critical, courts will only admit evidence of experiments that are conducted under nearly identical conditions as the actual event." *U.S. v. Jackson*, 479 F.3d. 485, 489 (7th Cir. 2007). However, "where the purpose of the experiment is not to recreate events but simply to

9

rebut or falsify the opposing party's sweeping hypothesis, the substantial similarity requirement is relaxed." *Id.* at 489. In order to determine if the substantial similarity requirement set forth in *Jackson* is relaxed, we must first determine if Dematic's testing of the Ford Bumper was for a purpose other than recreating the November 3, 2004 incident. *See id.*

This analysis, however, is handicapped by plaintiff's failure to provide specifics regarding the "bumper testing" he seeks to exclude. While plaintiff contends that Dematic's purpose in conducting the "bumper testing" was to recreate the accident, he does not cite any supporting deposition testimony or authority. Rather, plaintiff merely states that Dematic "brought the bumper back to its facility and performed tests on the bumper with it attached to a test device" and that the testing "involved people pushing on the bumper at different locations with force to see if the emergency stop switch activates." In response, defendant states that the testing it performed included photographs, "a very short video of the bumper," and a comparison of the Ford Bumper to a standard Dematic bumper which yielded pressure measurements, data displays, and other records of the Ford Bumper prior to its loss. Defendant also states that it "simply inspected and recorded the condition of the bumper by noting how the bumper performed when pressured from various angles." Finally, defendant claims that the bumper testing is not being offered into evidence as a recreation of the accident, but rather "to illustrate and explain the differences in performance of the two bumpers and to simply document the evidence."

Defendant relies on the Seventh Circuit's holding in *Nanda v. Ford Motor Co.*,

10

which affirmed a judgment against defendant car manufacturer on plaintiff's strict liability automobile design defect claim, to support the admissibility of the bumper testing. *Nanda,* 509 F.2d 213 (7th Cir. 1974).  In that case, the Seventh Circuit found the district court did not err in allowing plaintiff's expert to testify about a test conducted on the back half of a Ford Cortina, an automobile involved in the accident at issue.  *Id.* at 223. Defendant objected to this evidence because the test did not duplicate the essential conditions of the accident.  *Id.*  The Seventh Circuit rejected that argument on the grounds that the test "did not purport to be a reconstruction of the accident but was for the limited purpose of demonstrating that an impact of a given force could dislodge the fuel-filler pipe from the rear panel" of the automobile.  *Id.*  This same logic requires that we deny plaintiff's motion.  Because plaintiff has not provided any evidence to rebut defendant's representation that the purpose of the bumper testing was to compare the Ford Bumper to Dematic's standard bumper, plaintiff's request to exclude the bumper testing *in limine* is denied.  *See id.; Buscaglia v. U.S.*, 25 F.3d 530, 532-34 (7th Cir. 1994) (allowing evidence of three tests of a sample piece of floor time to measure surface's slipperiness in slip and fall case).

Plaintiff also claims that the "removal of the bumper create[s] a forensic evidence chain of custody problem."  Plaintiff does not cite any authority to support this statement, but rather relies on the deposition testimony of his expert, John Mroszczyk. However, plaintiff did not attach a copy of the deposition as an exhibit to his motion or otherwise provide this Court with a copy of the deposition transcript.  Moreover, the parties previously stipulated that the Ford Bumper was removed from AGV #22 and

taken to Dematic's facility for testing, and then returned to the Stamping Plant and later lost or destroyed by Ford.

Finally, plaintiff claims the bumper testing should be excluded because it is irrelevant. Relevant evidence is that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Here, plaintiff alleges that Dematic negligently designed the AGV system. Dematic contends that the bumper was a primary safety device for the AGV vehicles and the bumper testing is the only evidence of how Ford's modification to the bumper altered Dematic's design. Accordingly, the evidence is relevant.

Next, plaintiff requests that this Court preclude defendant from introducing two demonstrative exhibits identified as "mock ups of the AGV's and bumpers." Plaintiff does not provide any supporting authority for this request, but rather states that the approximation of the Ford Bumper on the mock-ups does not depict damages from the post-occurrence inspection, specifically that "the hinges were bent and otherwise damaged." Presumably, plaintiff's contention is that the benefit of the demonstrative exhibits is substantially outweighed by the danger of unfair prejudice or confusion, and therefore they should be excluded under Fed. R. Evid. 403.

In response, Dematic states that the demonstrative exhibits "are not evidence in and of themselves, but, rather, are simply tools to aid the jury in understanding what the equipment looked like and to demonstrate ... the dissimilarities in the Ford Bumper and a standard Dematic bumper" which is the subject of its expert's testimony. Dematic also

states that it will lay a proper foundation for the demonstratives at trial and explain any inconsistencies between the Ford Bumper and the model.

Demonstrative exhibits are routinely admitted to assist a jury in understanding how and why an expert reached his conclusions. The admissibility of a demonstrative exhibit may depend on the testimony of certain witnesses, and this Court will make that determination during the course of the trial. Accordingly, plaintiff's motion *in limine* to bar the demonstrative exhibits is denied. However, this ruling does not preclude the plaintiff from claiming that the benefit of the demonstrative exhibits is substantially outweighed by the danger of unfair prejudice, that the exhibits should be excluded due to lack of foundation, or that their use should be limited to a specific purpose and the jury provided with a limiting instruction.

### D. Defendant's Motion to Preclude Plaintiff from Presenting Evidence of Any Prior Occurrence that is Not Substantially Similar to the Accident at Issue

Finally, defendant moves *in limine* to exclude evidence it anticipates plaintiff will introduce through the testimony of Everado Ledezma of a prior incident at Line 191 on the grounds that this incident is not substantially similar to the accident at issue. Defendant also moves to exclude evidence of any prior occurrence that is not substantially similar on the grounds that the evidence is irrelevant or, alternatively, highly prejudicial. In response, plaintiff claims defendant's criteria for substantially similar is "unduly restrictive" and that at least eight written statements relating to the prior occurrence should be admitted into evidence to "help establish the common unsafe condition of the design and causation."

In this Circuit, "[e]vidence of other accidents in products liability cases is relevant to show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident." *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988) (*internal citations omitted*). However, before evidence of prior accidents may be admitted, "the proponent must show that the other accidents occurred under substantially similar circumstances." *Id.* Where evidence is proffered to show the existence of a dangerous condition or causation, the substantially similar requirement is "especially important." *Id*. This is because as the circumstances and conditions of the other accidents become less similar to the accident at issue, the probative force of the evidence decreases while the danger that the evidence will be unfairly prejudicial remains. *Id.* at 1268-69. In contrast, the substantially similar requirement is relaxed where prior accidents are introduced only to show that a defendant had notice of a condition, and not as substantive evidence that the presence of the condition created liability. *Dewick v. Maytag Corp.*, 325 F. Supp. 894, 904 (N.D. Ill. 2004), *citing Nachtsheim*, 847 F.2d at 1269 n.9.

In order to evaluate the degree of similarity between the prior incidents and the accident at issue, we must determine: (1) the theory of the case advanced by plaintiff and (2) the purpose for which plaintiff proffers the prior accident evidence. *In re Air Crash Disaster*, 1991 U.S. Dist. LEXIS 186144, *5 (N.D. Ill. Dec. 26, 1991), *citing Wheeler v. John Deere Co.*, 862 F.2d 1404, 1406 (10th Cir. 1988); *see also Weir v. Crown Equip. Corp.*, 217 F.3d 453, 458 (7th Cir. 2000) (reviewing plaintiff's theory of the case and purpose for introducing evidence of prior accident). Plaintiff alleges that

defendant negligently engineered and designed the AGV system. He further claims that information "about other occurrences" is admissible to show the existence of a condition that created liability (the unsafe design) and causation. Accordingly, the foundational requirement that plaintiff must establish is "especially important" and we must consider if the potential for distraction and prejudice that may result from this evidence weighs against admissibility. See *Nachtsheim,* 847 F.2d at 1269.

Plaintiff's operative complaint alleges that defendant negligently designed the AGV system "so that AGV's and trailers could foreseeably collide," incorporated an index switch "whose use would permit a collision," and placed responder B255 in a position that would allow multiple AGV vehicles in the loop at Line 191, thus "creating a risk of injury." Plaintiff further claims that the design and layout of the responders permitted multiple AGV vehicles in the loop at Line 191. Essentially, plaintiff claims that each of the alleged design and/or engineering defects created a risk that two AGV vehicles may collide. Defendant therefore claims that, at a minimum, the prior occurrences must involve a collision between multiple AGV vehicles in order to be "substantially similar." See *Milhailovich v. Laatsch*, 359 F.3d 892, 908 (7th Cir. 2004) ("the particular defect or danger alleged by the plaintiff will serve to define the degree of commonality that there must be among the accidents in order for them to be considered substantially similar.")

Plaintiff's counsel states that he will introduce evidence of a prior incident at Line 191 through the testimony of Mr. Ledezma. In his deposition, Mr. Ledezma recalls an incident involving an AGV on Line 191 that occurred "about three weeks" before the

15

accident at issue.  In order to determine if these incidents are substantially similar, we must compare Mr. Ledezma's recollection of the prior incident with plaintiff's allegations regarding the November 3, 2004 incident.

Mr. Ledezma testified that the prior incident involved "the first rack" hitting the manstand while plaintiff's injuries involved "the second rack."  In other words, Mr. Ledezma testified that the oncoming AGV's trailer hit the manstand, while plaintiff's injuries occurred after the oncoming AGV hit another AGV trailer.  Mr. Ledezma also testified that the prior incident involved a single AGV vehicle - the AGV trailer "itself hit the ... manstand."  Plaintiff's accident, however, involved multiple AGV's.  Finally, Mr. Ledezma testified that he did not know what caused the prior incident, "[t]he AGV just activated.  That's all I can think of."

Even if we were to construe plaintiff's allegations in the broadest sense - as alleging design defects that created a risk of collision involving any aspect of the AGV system - Mr. Ledezma's deposition testimony does not demonstrate that the two incidents occurred under substantially similar circumstances.  Mr. Ledezma's testimony is simply too vague.  Among other things, he cannot remember if the AGV was in the correct position at station 50, if he positioned the AGV at station 50, or when the accident occurred.  Further, Mr. Ledezma admittedly does not "have any idea" what caused the prior accident.  Absent an additional proffer, evidence of the prior occurrence will not be admitted at trial.

In addition to Mr. Ledezma's testimony, plaintiff also states his intention to introduce "written statements of Ford employees [that] describe prior occurrences at

Line 191." The written statements, described as the MacBreyer statement, Guth statement, Keys statement, Mendoze statement, Lecina statement, Hernandez statement, Orenalas statement, and Bratly statement, are attached as exhibits to plaintiff's response.[3] Plaintiff did not provide any authority to support the introduction of these statements into evidence at trial. Defendant requested and received leave to file a reply in further support of their motion in order to specifically address the exclusion of the written statements. In reply, defendant contends that these statements are hearsay and do not provide any basis for the Court to evaluate whether the alleged occurrences were similar to the incident at issue. We agree.

The hearsay rule precludes a party from introducing into evidence a statement, other than one made by a declarant while testifying at trial, to prove the truth of the matter asserted. Fed. R. Evid. 802. While there are a number of exceptions to this rule, there is no basis to find that an exception applies to the written statements.

Plaintiff alleges that the statements were prepared in connection with witness interviews conducted by an unidentified employee supervised by Mark Becker, Ford's safety engineer, following plaintiff's accident. For purposes of this motion, we accept those facts.

However, it is unclear who actually wrote the statements. According to defendant, all but one of the statements were handwritten by the Ford management employee taking the statement, not by the witness. The statements describe events that occurred "2-3 weeks ago" or "about 2-3 months ago." This Court cannot determine

---

[3]None of the declarants are on plaintiff's witness list.

17

which, if any, of these events are the same incident described by Mr. Ledezma in his deposition, nor can we determine if any of the written statements concern the same event. Most troubling, the statements were not made under oath. Because the witnesses who gave these statements will not testify at trial, there is simply no way for the jury to determine what they actually witnessed. In short, these statements are the very type of hearsay Rule 802 is designed to prevent. Fed. R. Evid. 802. *See, also Weir,* 217 F.3d at 458 (noting an "obvious hearsay problem" with accident reports collected from a variety of sources and stating that "the reports would not be admissible unless covered by an exception.")

Plaintiff also states that the written statements are admissible because his "expert reviewed those statements as part of the foundation for his opinions." Defendant asks this Court to preclude plaintiff from introducing facts regarding the prior occurrences through the testimony of his expert, Dr. Mroszcyk, and to exclude any opinion based solely on the hearsay statement.

Under Rule 703, expert opinion evidence that relies on underlying information that is otherwise inadmissible may be admitted so long as the underlying information is "of a type reasonably relied upon by experts in that particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. Rule 703 further provides that "[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. *see, also Cummins v. Lyle Indus.*, 93 F.3d 362,

272 (7th Cir. 1996).

Turning first to defendant's request to exclude any opinion based solely on the written statements, that request is denied without prejudice. As a practical matter, this Court cannot determine which, if any, of the opinions set forth in plaintiff's Fed. R. Civ. P. 26(a)(2) expert disclosure are based upon the hearsay statements. Moreover, in the absence of any evidence as to whether individuals in Dr. Mroszczyk's field routinely rely on written statements generated by in-house safety personnel as part of an accident investigation, we cannot determine if any opinions that are based on the written statements must be excluded. Should plaintiff attempt to introduce any opinion evidence based on the witness statements at trial, defendant is free to object.

However, defendant's request to preclude plaintiff's expert from becoming the "de facto spokesman for the declarants of these out-of-court statements" is granted. *See* Fed. R. Evid. 703. The fact that plaintiff's expert reviewed the written statements as part of the foundation for his opinion does not mean the statements themselves are admissible. *See Nachtshein*, 847 F.2d at 1270 ("[T]o say that Rule 703 permits an expert to base his opinion upon materials that would otherwise be inadmissible does not necessarily mean that materials independently excluded by the court by reason of another rule of evidence will automatically be admitted under Rule 703.") (*internal citations omitted*). Plaintiff cannot rely on his expert's review of the written statements to circumvent the hearsay rule and introduce the statements into evidence.

Based on the foregoing, defendant's motion is denied to the extent it seeks to

exclude any expert opinion based on the six witness statements and granted as to all other aspects.

## IV.	CONCLUSION

For the reasons set forth above, plaintiff's motion to bar any reference to unrelated health conditions, care or treatment is denied in part and granted in part; plaintiff's motion to bar any reference to negligence or other misconduct by Ford is denied; and plaintiff's motion to bar any reference to Dematic's bumper testing or in Court demonstration of AGV mockups is denied. Defendant's motion to preclude plaintiff from presenting evidence of any prior occurrence that is not substantially similar to the accident at issue is denied in part and granted in part.

ENTERED:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: April 14, 2008**