**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRETT T. ROBENHORST, ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 05 C 3192 |
| v. ) | |
| ) | Mag. Judge Michael T. Mason |
| DEMATIC CORPORATION ) | |
| f/k/a SIEMENS LOGISTICS AND ) | |
| ASSEMBLY SYSTEMS, INC. ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant Dematic Corporation f/k/a Siemens Logistics and Assembly Systems, Inc.'s ("defendant" or "Dematic") motion *in limine* to preclude plaintiff Brett T. Robenhorst ("plaintiff") from presenting evidence regarding or referring to any remedial measures taken subsequent to plaintiff's accident. For the reasons stated below, defendant's motion is granted in part and denied in part.

**I.    BACKGROUND**

Plaintiff seeks damages for injuries he sustained while working on Line 191 at Ford Motor Company's ("Ford") Chicago Heights Stamping Plant (the "Ford Plant"). The Ford Plant utilizes an automatic guided vehicle ("AGV") system. Plaintiff sustained his injuries while loading panels onto a trailer pulled by an AGV. The AGV[1] was manufactured by Dematic and sold to Ford in 1998. Each AGV at the Ford Plant was equipped with a bumper. As designed, the bumper is the primary safety device for the

---

[1]The record is not entirely clear regarding Dematic's role in designing, manufacturing, and/or engineering the remaining components of the AGV system.

vehicle and is designed to stop the AGV if it comes into contact with an unforeseen object, such as a person, a piece of equipment, a trailer, or another AGV. Following the accident, Ford employees removed the bumper on the AGV and gave it to two Dematic employees, who took it to Dematic's facility for testing. The inspection revealed that the bumper was not a Dematic bumper. In fact, the bumper on the AGV at the time of the accident (the "Ford Bumper") had been fabricated by Ford or someone hired by Ford and was not made out of original parts.

Plaintiff alleges that Dematic negligently engineered, designed and created the AGV system servicing Line 191 so that the vehicles and trailers could foreseeably collide. Defendant denies that it was negligent and denies that the AGV system, as manufactured, was unsafe. Defendant also contends that the AGV system was substantially modified by Ford or someone acting on Ford's behalf prior to the accident and was poorly maintained by Ford.

Dematic moves *in limine* to preclude plaintiff from presenting any evidence of certain alterations to the AGV system implemented after the November 3, 2004 accident, including evidence that Dematic and/or Ford: (1) changed the AGV software and installed magnets in the floor to change the station cycles from a jog system to an index system and (2) relocated charge plates and battery chargers on the incoming paths to change the approach of the incoming AGV vehicles. In support, Dematic relies on Federal Rule of Evidence 407 which provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for warning or instruction. This rule does not require the exclusion of evidence of

> subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

*See, also Kaczmarek v. Allied Chemical Corp.*, 836 F.2d 1055, 1060 (7th Cir. 1987). As defendant points out, there are strong policy reasons supporting the exclusion of subsequent remedial measures, including the "social policy of encouraging people to take, or at least not to discourage them from taking, steps in furtherance of added safety." *Public Serv. Co. of Indiana v. Bath Iron Works Corp.*, 773 F.2d 783, 791 (7th Cir. 1985) (*internal quotations omitted*).

Plaintiff acknowledges that, pursuant to Rule 407, subsequent remedial measures cannot be admitted to prove negligence. Thus, to the extent Dematic's motion seeks to bar plaintiff from introducing evidence of any subsequent remedial measures to establish that Dematic was negligent, it is undisputed. However, plaintiff contends that evidence of subsequent remedial measures should be admitted to prove matters other than Dematic's negligence. In response to defendant's motion, plaintiff's counsel states that in addition to the two types of evidence identified above, he will introduce evidence of the: (3) addition of a manual release button; (4) removal of the manstand; (5) installation of guardrails; and (6) relocation of the AGV paths to make the paths into the load station straight. Plaintiff contends that this evidence is admissible under the control exception, for impeachment, and to establish the feasibility of precautionary measures.

On April 14, 2008, this Court heard oral arguments on defendant's motion. At that time, plaintiff's counsel stated his intent to introduce the "Ideas Document" prepared by Jeffrey Guinn, a Dematic employee, following the accident. The Ideas Document

identifies proposed post-accident revisions to the AGV system. Plaintiff provided the document, marked as deposition exhibit 77B, to this Court for consideration. The parties also tendered a change order, dated November 5, 2004 and executed by Ford and Dematic, ("CO1") which sets forth the following changes to the parties' prior agreement:

1. Changes to Line 191 Station Layout and Cycle:
- Change load station 49 and 50 Station cycles from Jog to Index. Each station will have three index stop Locations.
- Engineering services to re-locate floor responders.
- Engineering services to relocate Station 27 Charge Plate and Path and (4) four Chargers currently located between Station 26 and 27.
- Includes Changes to Vehicle Software, AGView Software, magnets, System Layout, Installation Supervision, Commissioning and Launch Support.

CO1 also provides that "Installation and Electrical supplies are by FORD Motor Co. Ford Motor Co. will be removing the Man stand (Loading Platform) and lower Conveyor as necessary." Finally, CO1 states that the aforementioned changes will be implemented "Immediately once Valid FORD Approval is received on this document."

Plaintiff attached a second change order ("CO2") to his Submission of Supplemental Evidence Regarding Subsequent Remedial Measures. C02 reiterates the changes to Line 191 set forth in CO1 and outlines additional modifications to Line 164. CO2 states that Ford agreed to pay Dematic $32,867 for the aforementioned work and $30,421 for the changes outlined in CO1. Finally, CO2 states that the "original sell price" was $85,162, resulting in a new sell price of $148,450.

In oral arguments before the Court, the parties agreed that Ford was responsible for the removal of the manstand and installation of guardrails. With regard to the remaining subsequent remedial measures, the parties agreed that Dematic and Ford

4

collaborated on the work performed under the change orders, that Ford's electricians performed the labor where required by relevant union regulations, and that Ford paid Dematic for the work it performed.

Defendant's counsel acknowledged that Dematic, with Ford's approval, changed the AGV software and changed the station cycles from a jog to index system, as stated in CO1.

Defendant's counsel also acknowledged that Dematic relocated charge plates and battery charges on the incoming paths. Significantly, however, Dematic contends that it did not move responder B255, the responder at issue. Defendant claims that Ford moved the responders, including responder B255, prior to the accident. Defendant's counsel stated that Ford witnesses will testify that they routinely moved responders. In response, plaintiff's counsel admitted that there is no evidence that responder B255 was moved, a fact which is further supported by the excerpts from Mr. Guinn's deposition attached to plaintiff's supplemental filing.

Neither plaintiff nor defendant's counsel could explain what was done regarding the proposed "addition of a manual release button," however plaintiff points out that this is included in Guinn's Ideas Document. Finally, defendant's counsel acknowledged that Dematic relocated the AGV paths to make the paths into the load station straight at Ford's request, as set forth in CO1.

## II. LEGAL STANDARD

This Court has broad discretion in ruling on evidentiary questions presented before trial on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664

(7th Cir. 2002). The power to exclude evidence *in limine* derives from this Court's authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S. Ct. 460 (1984). Evidence should be excluded *in limine* only where it is clearly inadmissible on all potential grounds. *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Thus, the party moving to exclude evidence *in limine* has the burden of establishing that the evidence is not admissible for any purpose. *Id.; see, also Wilson v. Pope* 1997 U.S. Dist. LEXIS 10228, *15 (N.D. Ill. July 14, 1997). Denial of a motion *in limine* does not mean that all evidence contemplated by the motion will be admitted at trial. *Hawthorne,* 831 F. Supp. at 1401. Rather, denial means the court cannot determine whether the evidence in question should be excluded outside of the trial context. *United States v. Connelly*, 874 F. 2d 412, 416 (7th Cir. 1989); *Broom v. Bozell, Jacobs, Kenyon & Eckhardt*, 867 F. Supp. 686, 690-91 (N.D. Ill. 1994). Accordingly, this Court will entertain objections as they arise at trial, even if the proffer falls within the scope of a denied motion *in limine*. *Connelly*, 874 F.2d at 416.

With these guidelines in mind, we turn to defendant's motion.

## III. DISCUSSION

### A. Control

Plaintiff claims the testimony at trial will show "a continued course or practice by Ford of consulting with the defendant before making any changes" to the AGV system. Therefore, plaintiff contends that the post-accident modifications are admissible as an

6

example of Dematic's continued control over the AGV system. Not surprisingly, defendant disputes plaintiff's characterization of the testimony that will be offered at trial, and claims that Ford, not Dematic, had control over the AGV system. Defendant also states that Ford made changes to the AGV system without defendant's involvement, as a result of which "any probative value that this evidence may have to the question of control is so slim that the evidence must be excluded."

The evidence presently before this Court shows that Ford did in fact make changes to the AGV system without consulting or notifying Dematic, most notably by replacing the standard bumper with the Ford Bumper. Moreover, there is evidence that Dematic did not perform any work in the Ford Plant without Ford's prior authorization and approval. In fact, counsel for defendant stated that Dematic could not even enter the Ford Plant without Ford's permission. If true, these facts weigh heavily against the application of the control exception and in favor of the exclusion of all subsequent remedial measures performed by Dematic. However, because this Court does not have the benefit of evidence which will be introduced at trial, including evidence regarding Dematic's role in manufacturing, engineering and maintaining the remaining components of the AGV system, it would be premature to decide this issue *in limine*.

In the alternative, defendant requests that we bar evidence of the work that it performed at the Ford Plant following plaintiff's accident on the grounds that plaintiff has not establish how this evidence relates to Dematic's alleged duty. As stated in defendant's reply, the justification for permitting use of evidence of a subsequent remedial measure to show control is that it establishes the existence of a duty. 23 Fed. Prac. & Proc. Evid. §5287. "Therefore, to be admissible on this ground the remedial

measure must be relevant to the issue of duty." *Id.* Defendant claims that plaintiff "has not explained why or how disclosing these subsequent measures will help him establish that Dematic owed him a duty." We agree. However, plaintiff may be able to lay a sufficient foundation for the introduction of this evidence at trial. Therefore, we cannot decide this issue *in limine*. Nevertheless, in order to avoid unnecessarily placing prejudicial evidence before the jury, we find that before plaintiff may refer to or introduce any evidence of any subsequent remedial measures designed, performed, or supervised by Dematic, including evidence in the form of the change orders themselves, he must request a sidebar.

Defendant also seeks to bar evidence relating to the removal of the manstand and installation of guard rails. This work was done by Ford, not Dematic. In fact, Dematic did not design, supply, install or recommend the use of a manstand. Plaintiff contends that Rule 407 does not require the exclusion of post-accident remedial measures taken by a person who is not accused of liability and that the policy behind Rule 407 of encouraging safety precautions does not apply. *See* Moore's Federal Rules Pamphlet, Part 2, 246-47. In response, defendant states that the policy behind Rule 407 still applies because Dematic voluntarily participated in recommending changes to Ford and then carrying out those changes which Ford agreed to pay for. *See In re Air crash in Bali, Indonesia*, 871 F.2d 812 (9th Cir. 1989).

There is simply no evidence that Dematic recommended these changes or that Ford paid Dematic for any work relating to the manstand or guard rails. In their oral arguments before this Court, both parties stated that Ford, not Dematic, removed the manstand and installed guard rails. This is consistent with CO1 which states that Ford

8

will remove the manstand and lower conveyor as necessary. Moreover, the Ideas Document does not mention the manstand or guard rails. Accordingly, defendant's request to exclude this evidence *in limine* is denied. This ruling, however, does not preclude defendant from raising an objection at trial. *See Connelly*, 874 F. 2d at 416.

### B.     Impeachment

Next, plaintiff claims that evidence of subsequent remedial measures is admissible for impeachment purposes. Specifically, plaintiff seeks to introduce evidence of subsequent remedial measures to impeach witnesses who testify that the Ford Bumper caused the accident and/or testify that the AGV system designed by Dematic was safe.

With regard to the Ford Bumper, plaintiff claims that "notably missing" from the list of remedial measures proposed in the Ideas Document is the mandatory use of standard Dematic bumpers. Plaintiff reasons, without citation to supporting authority, "that there were six remedial measures undertaken right after this occurrence undermines defendant's claim that using an OEM bumper was the sole proximate cause of the occurrence and will impeach any witness who so testifies."

As an initial matter, based on the evidence before us, this Court cannot determine if Ford did, in fact, exclude the bumpers from the list of post-accident remedies. Dematic contends that there is evidence that Ford changed out the bumpers following the accident, specifically the post accident video taken the day after plaintiff sustained his injuries. That video is listed as a proposed joint trial exhibit and, presumably, will be placed before the jury at trial.

Moreover, there is no basis for us to conclude that Dematic knew Ford had

9

replaced the bumper at the time Mr. Guinn drafted the Ideas Document. Ford, not Dematic, owned, operated and maintained the AGV's. Dematic contends - and plaintiff previously stipulated - that it did not discover that Ford had replaced the bumper until after the accident when, with Ford's permission, two Dematic employees took the bumper to Dematic's facility where it was inspected, measured and tested. In oral arguments before this Court, plaintiff's counsel stated that the Ideas Document was developed on November 4 or 5, 2004 - around the time Dematic employees removed the bumper from the Ford Plant. Accordingly, without evidence that Dematic knew that Ford had replaced the standard bumper with the OEM bumper prior to the creation of the Ideas Document, the fact that it excludes the mandatory use of OEM bumpers is of no probative value.

Nevertheless, without knowing the specific testimony plaintiff seeks to impeach, this Court cannot determine if evidence of subsequent remedial measures is admissible for impeachment purposes. *See Trytko v. Hubbell, Inc.* 28 F.3d 715, 725 (7th Cir. 1997) (evidence of remedial measures may be admissible for impeachment). However, our denial of defendant's motion to exclude evidence of subsequent remedial measures for impeachment purposes *in limine* does not mean that plaintiff is free to reference subsequent remedial measures in his opening statement or to question witnesses whose testimony is not properly impeachable under this exception. The impeachment exception must be applied with care. As the Seventh Circuit previously held, "any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach [defendant's] testimony that he was using due care at the time of the accident, [and] if this counted as 'impeachment' the exception would swallow the rule."

*Flaminio v. Honda Motor Co., Ltd.*, 733 F.2d 463, 468 (7th Cir. 1984). Applied to the present case, this holding means that evidence of subsequent remedial measures is not admissible to impeach testimony that the AGV system was "safe," but may be admissible to impeach other testimony offered at trial. *See id.* at 468-69 (evidence that defendant modified motorcycle struts following accident would be admissible for impeachment if defendant testified that it "would never have thickened the struts"); *see, also Sencon Sys., Inc. v. W.R. Bonsal Co.*, 1987 U.S. Dist. LEXIS 4567, *4 (N.D. Ill. June 3, 1987) ("If, for example, plaintiff argues that ... they were so pleased with [their formula] that they would never consider changing it, then such evidence of a proposed or effected change would be admissible for purposes of impeachment.") As is the case with plaintiff's proposed use of the control exception, we are concerned that evidence relating to subsequent remedial measures could unfairly prejudice or confuse the jury. Accordingly, before plaintiff may impeach a witness with evidence of a subsequent modification to the AGV system, he must first notify this Court so that prejudicial evidence is not unnecessarily put before the jury.

  **C. Feasibility**

Finally, plaintiff claims that evidence of the post-accident remedial measures is admissible to show that these measures were feasible prior to the accident. Under Rule 407 evidence of subsequent remedial measures may be admissible when offered to show "feasibility of precautionary measures, *if controverted*." Fed. R. Evid. 407 (*emphasis added*); *see, also In re Air Crash near Roselawn*, 1997 U.S. Dist. LEXIS 13788, *4-5 (N.D. Ill. Sept. 10, 1997) (excluding subsequent remedial measures unless the feasibility of such measures prior to the accident is controverted by defendants).

11

Defendant does dispute the feasibility of the subsequent remedial measures. Rather, defendant contends that Ford - not Dematic - had control over the AGV system. Therefore defendant could not have independently undertaken the remedial measures, or performed any work on the AGV system without a request from Ford. Defendant indicated, in its oral arguments before this Court, that it would be willing to stipulate to the prior feasibility of post-accident remedial measures. Where a defendant acknowledges that an alternative design is feasible, evidence of subsequent remedial measures is not admissible to establish feasibility. *See In re Air Crash Disaster at Sioux City,* 1991 U.S. Dist. LEXIS 18637, * 6 (N.D. Ill. Dec. 26, 1991). Therefore, defendant's motion is granted to the extent it asks this Court to bar evidence of Dematic's post-accident remedies to establish that these measures were feasible prior to the accident. However, should defendant contest the feasibility of any of its subsequent remedial measures at trial, plaintiff is free to request a side bar and seek to introduce this evidence.

### D. Plaintiff's Proposed Expert Testimony

Defendant also seeks to bar plaintiff's expert from introducing evidence of post-accident measures that would otherwise be inadmissible. Plaintiff contends that he should be able to introduce evidence of subsequent remedial measures through his expert, who will testify that the failure of the AGV system to have features added by Dematic's subsequent remedial measures constitutes negligence. *See* plaintiff's Fed. R. Civ. P. 26(a)(2)(B) Disclosure. Because Rule 407 prohibits the introduction of evidence of subsequent remedial measures to prove "a defect in a product" or "a defect in a product's design," plaintiff's expert cannot rely on the post-accident modifications as

a basis for his opinion.

For example, plaintiff's expert opines that the use of a jog control instead of an index control should have been considered during the design of the AGV system. This Court is not attempting to preclude plaintiff's expert from opining that the use of a jog control was a design defect. Rather, we hold that he must base his opinion on something other than the alterations made to the AGV system following plaintiff's accident, such as the industry standard at the time the AGV system was designed. *See* Fed. R. Evid. 703 ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect"); Wright and Miller, 29 Fed. Prac. & Proc. §6273.

**IV.   CONCLUSION**

For the reasons stated above, defendant's motion is granted to the extent it seeks an order that plaintiff's expert must have an independent basis for his opinion that the AGV system's failure to have features added by Dematic's remedial measures constitutes negligence, granted to the extent it seeks an order that plaintiff may not introduce evidence of Dematic's post-accident remedies to establish that these measures were feasible prior to the accident, and denied as to all other aspects. However, before plaintiff may introduce evidence of any subsequent modifications to the

AGV system, other than the removal of the manstand and installation of guardrails by Ford, whether to establish control, for impeachment, to establish feasibility, or for any other purpose, he must first request a sidebar so that prejudicial evidence is not unnecessarily put before the jury.

                                                **ENTERED:**

                                                *[signature]*
                                                _____
                                                **MICHAEL T. MASON**
                                                **United States Magistrate Judge**

**Dated: April 22, 2008**